**REED SMITH LLP**
Michael J. Venditto
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
mvenditto@reedsmith.com

**REED SMITH LLP**
Paul M. Singer
225 Fifth Avenue
Pittsburgh, PA  15222
psinger@reedsmith.com

Derek J. Baker
1717 Arch Street
Philadelphia, PA  19103
dbaker@reedsmith.com

*Attorneys for*
*South Carolina Public Service Authority*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>WESTINGHOUSE ELECTRIC COMPANY LLC,<br><br>*et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 17-10751 (MEW)<br><br>(Jointly Administered) |
| WESTINGHOUSE ELECTRIC COMPANY LLC, *as reorganized*<br><br>        Plaintiff,<br><br>v.<br><br>SOUTH CAROLINA PUBLIC SERVICE AUTHORITY<br><br>        Defendant. | Adv. Proc. No. 19-01109-(MEW) |

**DEFENDANT / MOVANT SOUTH CAROLINA PUBLIC SERVICE AUTHORITY'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**WITHDRAW THE REFERENCE**

## PRELIMINARY STATEMENT

Defendant / Movant South Carolina Public Service Authority ("Santee Cooper"), submits this memorandum of law in support of its *Motion to Withdraw the Reference* seeking to withdraw the reference to the Bankruptcy Court under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Local Bankruptcy Rule 5011-1 of the adversary proceeding ("Adversary Proceeding") commenced by Westinghouse Electric Company LLC (pre-petition and pre-confirmation and along with certain of its affiliates, referred to as the "Debtor," and post-confirmation, referred to as the "Plaintiff" or "Reorganized WEC") in the United States Bankruptcy Court in the Southern District of New York (the "Bankruptcy Court").

More than a year after confirmation of the Debtor's Confirmed Plan, and more than ten (10) months after the Effective Date of the Confirmed Plan, Reorganized WEC is requesting the Bankruptcy Court to determine its contested legal interests under applicable non-bankruptcy state law in certain equipment purchased by Santee Cooper in connection with the construction of nuclear power plants in South Carolina.

In the sole count of its complaint (the "Complaint" or "Adv. Compl."), Reorganized WEC requests relief that does not implicate the confirmed Plan, the administration of the estate, or any other party in interest to the Debtor's bankruptcy filing. Instead, Reorganized WEC asks the Bankruptcy Court to resolve a state law dispute between two non-debtor parties concerning title to and possession of numerous unidentified equipment items located at an out-of-state project site.

In this post-confirmation context, the relief sought by Reorganized WEC is too tenuously connected to the Debtor's bankruptcy case and Plan to be decided by the Bankruptcy Court. Rather, in these circumstances, judicial economy and efficiency are best served by

withdrawal of the reference now, so that the merits of the underlying dispute may be fully adjudicated in the first instance.  Further, and upon withdrawal of the reference from the Bankruptcy Court, Santee Cooper submits requests that the District Court should, if it determines there is Bankruptcy Court jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1334, exercise its discretion to abstain from adjudicating the underlying dispute under 28 U.S.C. § 1334(c)(1) in the interest of justice as more fully explained below.

## BACKGROUND[1]

### A.    The EPC Agreement

On May 23, 2008, a consortium consisting of Debtor, along with Stone & Webster, Inc. entered into an Engineering, Procurement and Construction Agreement (the "EPC Agreement") with South Carolina Electric & Gas Company ("SCE&G"), for itself and as agent for Santee Cooper (collectively, the "Owners") to design, procure, construct, and test two AP1000 nuclear power plants (the "Project") in Jenkinsville, South Carolina (the "Site").  See Adv. Compl., ¶14.

On March 28, 2017, on the eve of when Debtor filed the underlying bankruptcy cases in the Bankruptcy Court, and upon information that, due to a lack of funding, Debtor would not continue construction of the multi-billion dollar Project, Debtor and the Owners entered into an Interim Assessment Agreement ("IAA") to continue the construction of the Project, while the Owners assessed the economic feasibility of the Project.  Id., ¶24.  Continued performance under the IAA was short-lived, however, as on July 31, 2017, Santee Cooper's Board of Directors voted to suspend construction of the Project and SCE&G informed Debtor

---

[1] Pursuant to Fed. R. Evid. 201(b), Santee Cooper requests that this Court take judicial notice of the docket entries in Plaintiff's bankruptcy case and the Adversary Proceeding.  See, e.g., Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a docket entry in another court); United States ex rel. Robert H. Finke & Sons, Inc. v. A.P. Reale & Sons, Inc., 2014 U.S. Dist. LEXIS 32234 (S.D.N.Y. Feb. 18, 2014) (same).

that it was abandoning the Project.  Id., ¶26.  While work on the Project ceased, the various

pieces of equipment (the "Equipment") acquired under the EPC Agreement, in various states of

construction and installation, remained and currently remain on the Site.  On December 13, 2017,

Santee Cooper acquired SCE&G's interest in the Equipment at the Site, becoming the one

hundred percent (100%) owner of the Equipment.

### B.    The Chapter 11 Cases and Plan

On March 29, 2017, Debtor commenced jointly administered proceedings under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code"), in the Bankruptcy Court.  Debtor's case is styled as *In re Westinghouse Electric*

*Company LLC, et al*., Case No. 17-10751 (MEW) (the "Chapter 11 Cases").

On March 28, 2018, Debtor's chapter 11 plan (the "Plan") was confirmed (the

"Confirmation Order") [Doc. No. 2988].  The Plan provided for the sale of the newly issued

stock in Debtor to a subsidiary of Brookfield WEC Holdings Inc., a party to a Plan Funding

Agreement ("PFA") executed in contemplation of Debtor's reorganization.  Adv. Compl., ¶31.

On August 1, 2018, the Plan went effective (the "Effective Date") marking the date whereby the

Plan was implemented including, *inter alia*, the rejection of the EPC Agreement.  Id., ¶33.

### C.    The Equipment Dispute and this Adversary Proceeding

During 2018 and extending into 2019, Santee Cooper and representatives for

Reorganized WEC discussed arrangements under which Equipment might be sold.  Id., ¶¶38-39.

In the course of those discussions and despite Santee Cooper's belief that it owned the

Equipment by way of having made payments (along with SCE&G) to purchase the Equipment,

Reorganized WEC advised Santee Cooper of its belief that Reorganized WEC might possess a

remaining interest in the Equipment.  Santee Cooper disagreed and advised Reorganized WEC of its position.

The Adversary Proceeding followed.  On April 5, 2019, Plaintiff filed the Complaint commencing the Adversary Proceeding seeking an adjudication of the title to certain items of Equipment located at the Site and requesting that the Bankruptcy Court order Santee Cooper to turnover or otherwise provide immediate possession of the Equipment to Reorganized WEC.

## ARGUMENT

### I.    Standard for Withdrawal of the Reference

In the Southern District of New York, all matters related to or arising under title 11 are automatically referred to the Bankruptcy Court.  Amended Standing Order of Reference, No. 12- mc-00032, M10-468 (S.D.N.Y. Feb. 1, 2012); see 28 U.S.C. § 157(a). However, this automatic reference may be withdrawn "for cause."  28 U.S.C. § 157(d); In re Residential Capital, LLC, No. 14-cv-6015 (RA), 2015 WL 739829, at *3 (S.D.N.Y. Feb. 20, 2015).  When ruling on a motion to withdraw the reference for cause, courts consider the following factors:  (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) delay and costs to the parties; (4) uniformity of bankruptcy administration; (5) forum shopping; and (6) other related factors (collectively, the "Orion Factors").  See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993); Rescap Liquidating Trust v. PHH Mortg. Corp., 518 B.R. 259, 263 (S.D.N.Y. 2014) (citing S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996)).  The party seeking withdrawal bears the burden of establishing "cause."  See Thaler v. Parker, 525 B.R. 582, 585 (E.D.N.Y. 2014).

II.     **The Relevant Orion Factors Favor Withdrawal**

A.      **The Claim asserted in the Adversary Proceeding is beyond the Bankruptcy Court's adjudicative power.**

As an Article I court, the Bankruptcy Court is a tribunal with limited jurisdiction that cannot constitutionally exercise the judicial power of the United States.  Stern v. Marshall, 131 S. Ct. 2594, 2598 (2011).  "Congress has prescribed the scope of bankruptcy jurisdiction over civil proceedings (as opposed to cases) in 28 U.S.C. § 1334(b), limiting it to proceedings that arise in a bankruptcy case or arise under the bankruptcy law (i.e., core proceedings) and proceedings that relate to a bankruptcy case (i.e., non-core proceedings)."  In re Masterwear Corp., 241 B.R. 511, 515 (Bankr. S.D.N.Y. 1999).

In order to come within a bankruptcy court's post-confirmation jurisdiction, the proceeding must affect some aspect of the plan (i.e. the matter —its meaning, its implementation or its consummation).  In re Park Ave. Radiologists, P.C., 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011).  Accordingly, bankruptcy courts have repeatedly found a lack of subject matter jurisdiction where post-plan adjudication of the subject dispute does not involve interpretation of the confirmed plan or where the dispute does not affect any other party to the bankruptcy proceeding besides the reorganized debtor.  See In re Park Ave. Radiologists, P.C., 450 B.R. at 470; Cantor v. Am. Banknote Corp., No. 06 CIV. 1392 (PAC), 2007 WL 3084966, at *4 (S.D.N.Y. Oct. 22, 2007).  When a bankruptcy court is presented with a post-confirmation dispute involving a reorganized debtor, as is the case here, case law requires the court to determine whether the dispute has a "close nexus" to the bankruptcy case or "relates back to the effectuation of the Chapter 11 proceeding."  In re Ener1, Inc., 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (quoting Donaldson v. Bernstein, 104 F.3d 547, 553 (3d Cir. 1997).

Once a plan is confirmed, it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court.  Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991).  Additionally, there is no estate, as property reverts to the reorganized debtor.  11 U.S.C. § 1141(b); Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.), 272 B.R. 74, 97–98 (Bankr. S.D.N.Y. 2002).  Accordingly, "once confirmation occurs, the bankruptcy court's jurisdiction shrinks."  In re Park Ave. Radiologists, P.C., 450 B.R. at 467 (internal citations omitted).  Because of the bankruptcy court's post-confirmation jurisdictional shrinkage, a party seeking to establish post-confirmation jurisdiction must satisfy two requirements. See In re General Media Inc., 335 B.R. 66, 73–74 (Bankr. S.D.N.Y. 2005) (collecting cases).  "First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation trust agreement. Second, the plan must provide for the retention of jurisdiction over the dispute." Id. (quoting Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 162-63 (3d Cir. 2004)); Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 230 (2d Cir. 2002).  As more fully explained below, Reorganized WEC cannot satisfy these required elements and has not met its jurisdictional burden of proof.

The sole count of the Complaint involves state law claims for the determination of Reorganized WEC's property interest, if any, in the Equipment.  According to Reorganized WEC, that count turns solely on a contractual interpretation of the EPC Agreement—a pre-petition contract which was expressly rejected by the same entity that now seeks to enforce its contractual provisions.  See Adv.. Compl., ¶ 55.  Any recovery pursuant to this Adversary Complaint will inure solely to the benefit of Reorganized WEC and resolution of these

proceedings will not require the adjudicative body to consult the Plan or interpret any of the provisions contained therein.

Plaintiff is seeking to compel turnover of Equipment.  However, bankruptcy courts, including this Bankruptcy Court, have routinely refused to consider post-confirmation turnover claims on jurisdictional grounds—especially where title to the underlying property is disputed.  See, e.g, In re General Media Inc., 335 B.R. at 75-76 ("a turnover proceeding under §542 will not lie following confirmation); In re Rickel & Assocs., Inc., 272 B.R. at 97–98; Poplar Run Five Ltd. P'ship v. Virginia Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship), 192 B.R. 848, 856 (Bankr. E.D.Va. 1995); Venn v. Kinjite Motors, Inc. (In re WMR Enters., Inc.), 163 B.R. 887, 889 (Bankr. N.D. Fla. 1994); see also In re Johnson, 215 B.R. 381, 386 (Bankr. N.D. Ill. 1997) ("Turnover is not intended as a remedy to determine disputed rights to property. Rather, it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate."); In re Jamuna Real Estate, LLC, 357 B.R. 324, 333 (Bankr. E.D. Pa. 2006) (turnover is not a proper cause of action when there is a bona fide dispute of the claim).

Further, the Bankruptcy Court's general statements about retention of jurisdiction in the Confirmation Order cannot supply the Bankruptcy Court's missing statutory and constitutional post-petition jurisdiction.  Section 13 of the Plan provides that "[o]n and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases . . ." and then lists twenty particular matters. However, no specific reference is made in the Plan or the Confirmation Order to the Equipment title issues now at the heart of the Adversary Complaint.  See Hosp. and Univ. Prop. Damage Claimants v. Johns Mansville Corp. (In re Johns-Mansville, Corp.), 7 F.3d 32, 34 (2d. Cir. 1993) (the plan must provide for retention of jurisdiction over the dispute).

Indeed, the Confirmation Order states that, unless specifically provided for in the Plan, on and after the Effective Date the Reorganized Debtors will operate their businesses and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code as if there were no pending cases under any chapter or provision of the Bankruptcy Code.  Confirmation Order, ¶ 7 at 26-27.  As this Bankruptcy Court explained in Ener1:  "A retention of jurisdiction provision cannot *create* subject matter jurisdiction; it only allows the bankruptcy court to adjudicate the retained claim of a reorganized debtor *if* the 'close nexus' test is also satisfied." 558 B.R. at 98 (emphasis original).

The Bankruptcy Court's post-confirmation jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement . . . ."  In re Tribune Co., 464 B.R. 126, 179 n. 63 (Bankr. D. Del. 2011) (quoting Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 161 (3d Cir. 2004)).  Here, aside from the initial conclusory assertions that the dispute impacts the Plan, the Complaint makes no substantive allegations to support its assertion that provisions of the Plan are, in fact, implicated.  No close nexus exists between the claims alleged in the Complaint and the Plan, regardless of the Bankruptcy Court's retained jurisdiction clause in the Confirmation Order.  Accordingly, the first Orion Factor militates in favor of withdrawing the reference.

**B.     Withdraw of the reference now achieves efficiency and reduces costs to the Parties.**

To avoid the costs and delay associated with wasteful and duplicative litigation, and to promote judicial economy and efficiency, this District Court should exercise its discretionary powers and withdraw the reference to the Bankruptcy Court of the Adversary

Proceeding.  Where the Bankruptcy Court is unable to fully and finally adjudicate a proceeding, the remaining factors support withdrawing the reference because it avoids the District Court having to review and retry all of the issues decided by the Bankruptcy Court and, thus, avoids timely and costly duplicative litigation.  See Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP (In re Coudert Bros. LLP), 462 B.R. 457, 467 (Bankr. S.D.N.Y. 2011) ("where the Bankruptcy Court lacks final adjudicative authority, the remaining . . . considerations will often tend to point toward withdrawal . . . [because] in a given case unnecessary costs could be avoided by a single proceeding in the district court").

The Bankruptcy Court is not better equipped than this Court to determine the Adversary Proceeding.  Plaintiff commenced the Adversary Proceeding approximately one month ago.  The only substantive filing in the Adversary Proceeding, beyond Reorganized WEC's Complaint, is Santee Cooper's motion to dismiss ("Movant's Motion to Dismiss"), filed contemporaneously herewith.  Discovery has not commenced and the Bankruptcy Court has not had the opportunity to become familiar with the underlying facts of this Adversary Proceeding.  Thus, the parties can submit all substantive briefs directly to the District Court with no delay and at no additional cost.  See In re Coudert Bros., 462 B.R. at 472 ("as no discovery has taken place, and no case management plan or other course of proceeding has been agreed on, bringing the actions before this Court will not cause undue delay or require any duplication of effort").

In addition, allowing final orders and judgments on the claim to originate from the District Court and be subject to the same standard of review also fosters the economical use of the resources of the District Court, Bankruptcy Court and the parties by eliminating duplicative litigation which will further delay the ultimate conclusion of this Adversary Proceeding and increase the costs to the parties.  The fact that the Adversary Proceeding is in its earliest stage,

coupled with the likelihood of a collateral attack on any judgment rendered by the Bankruptcy Court, strongly favors withdrawing the reference at this time.

### C.        The other <u>Orion</u> Factors are not implicated here.

The remaining Factors—uniformity of bankruptcy administration, forum shopping, and "other related factors"—are neutral.  As discussed above, the Bankruptcy Court lacks final adjudicative authority as to the Complaint, making withdrawal appropriate.  Further, withdrawal of the reference will not foster either consistent or inconsistent administration of the Debtors' Bankruptcy Case because nothing remains to administer.  <u>See</u> **Exhibit A** (Confirmation Order), **Exhibit B** (Notice of Effective Date).  Consequently, any damages awarded in connection with the claim asserted in the Adversary Proceeding would benefit Plaintiff only, not its creditors or its fully administered bankruptcy estate.

Additionally, withdrawal of the reference does not implicate forum shopping by either of the parties.  The typical goals of forum shopping include "finding a jurisdiction with more favorable law, and geographical convenience."  <u>In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.</u>, No. 03-1529, 2006 U.S. Dist. LEXIS 8700, at *21 (S.D.N.Y. Feb. 9, 2006). Santee Cooper seeks to avoid unnecessary appeals, collateral attacks or duplicative litigation or review (and the related expenses) due to the Bankruptcy Court's limitations as an Article I court. As discussed above, a determination of non-debtor interest in non-estate property belongs in the District Court as an Article III court.  Withdrawal of the reference to the District Court also does not implicate the hallmarks of forum shopping because the District Court and the Bankruptcy Court are within the Second Circuit.  <u>Id.</u> (granting motion to withdraw the reference).

**III.**    **The District Court should abstain from hearing these proceedings in the interest of justice under 28 U.S.C. § 1334(c)(1)**

If the District Court withdraws the reference, the District Court can and should

grant the Motion to Dismiss based on lack of subject matter jurisdiction.  In the event the District

Court does not dismiss the Complaint, the District Court should abstain from adjudicating the

matter pursuant to 28 U.S.C. § 1334(c)(1).

The statute governing district (and hence bankruptcy) courts' jurisdiction over

bankruptcy cases and proceedings, 28 U.S.C. § 1334, provides that:

> [N]othing in this section prevents a district court in the interest of justice, or in the
> interest of comity with State courts or respect for State law, from abstaining from
> hearing a particular proceeding arising under title 11 or arising in or related to a
> case under title 11.

28 U.S.C. §1334(c)(1).  A court exercising § 1334 jurisdiction can abstain when its abstention is

in the interest of justice (and not just in the interest of comity with State courts or respect for

State law).  See In re Motors Liquidation Co. f/k/a General Motors Corp., 457 B.R. 276, 288

(Bankr. S.D.N.Y. 2011).

The standards for discretionary abstention under section 1334(c) involve a multi-

factor analysis including criteria overlapping with certain Orion factors.  They include:

> (1) the effect on the efficient administration of the bankruptcy estate, (2) the
> extent to which issues of state law predominate, (3) the difficulty or unsettled
> nature of the applicable state law, (4) comity, (5) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case, (6) the existence of the
> right to a jury trial, and (7) prejudice to the involuntarily removed defendant.

Id. (citing In re Lyondell Chemical Co., 402 B.R. 596, 613 (Bankr. S.D.N.Y. 2009)).

Although federal courts should be sparing in the exercise of discretionary

abstention, in an appropriate case, a court nevertheless should abstain.  In re Portrait Corp. of

America, Inc., 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009).  Here, consideration of the relevant

factors indicates that abstention is appropriate in these circumstances.

A.    **The remoteness to the bankruptcy estate's administration and the underlying bankruptcy case favors abstention.**

At its core, this dispute is between two non-debtor parties and its outcome will have no effect on the Debtor's bankruptcy estate or any aspect of its administration:  the Plan has been confirmed and administered.  Accordingly, the dispute at issue is unrelated to the Debtor's bankruptcy case.  In similar circumstances, courts in this District have opined that a "court should interpose itself in [the reorganized debtor's] affairs only with respect to matters where the bankruptcy court has a significant interest, or that truly involve bankruptcy law or policy."  In re Motors Liquidation, 457 B.R. at 289-90.  Because this matter cannot affect an administered estate and is wholly independent of the Debtor's bankruptcy case, these factors weigh in favor of abstention.

B.    **Nonbankruptcy issues predominate the dispute.**

There are no bankruptcy issues in dispute at all.  When bankruptcy issues are present, and especially when they predominate, bankruptcy courts should exercise their specialized knowledge and experience to decide such matters.  Conversely, in situations where the circumstances do not call for application of bankruptcy expertise, it likewise militates in favor of abstention.  Id. at 290.

C.    **There is no prejudice to Reorganized WEC and there is prejudice to Santee Cooper.**

The locus of operative facts in the Complaint is South Carolina:  the Equipment is located in South Carolina; witnesses with knowledge regarding the circumstances and conditions at the Site are in South Carolina; Santee Cooper is a South Carolina entity.  Accordingly, proceeding with a hearing in this remote venue is prejudicial to Santee Cooper and supports the conclusion that abstention is appropriate.

The proper forum for deciding the Adversary Proceeding is in South Carolina where the Project and Equipment are located.  In <u>Shaffer v. Heitner</u>, a case involving Delaware property and an out-of-state defendant, the United States Supreme Court, in dicta, noted that the "[t]he State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State."  433 U.S. 186, 207 (1977).  Moreover, as a matter of black letter law, a seminal treatise advises that "[a] state has power to exercise judicial jurisdiction to affect interests in a chattel in the state . . . although a person owning or claiming an interest in chattel is not personally subject to the judicial jurisdiction of the state."  <u>See</u> Restatement (Second) of Conflicts of Laws § 60 (1971).

### D.    Overall balancing of the relevant factors favors abstention.

Where supported by a majority of the relevant factors, "the balance tips decidedly in favor of abstention." <u>In re Motors Liquidation</u>, 457 B.R. at 292-93.  The underlying controversy—a determination of state created property interests—does not involve anything as to which the District Court has any particular knowledge or expertise warranting the exercise of its jurisdiction granted pursuant to the Bankruptcy Code.  Id.  Furthermore, determination of this controversy does not bear on the objectives to be achieved in an existing chapter 11 case or otherwise advance bankruptcy needs and concerns.  As observed by the bankruptcy courts in this District, "it's better for the New York bankruptcy court to minimize its role in [reorganized corporation's] affairs, and to act only with respect to matters where the New York Bankruptcy Court has a significant interest, or that truly involve bankruptcy law or policy."  <u>Id.</u> at 293

(abstaining from hearing the controversy in favor of the United States District Court for the

Eastern District of Michigan).

## <u>CONCLUSION</u>

For the foregoing reasons, Santee Cooper requests that this Court enter an Order

(i) pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure,

and Rule 5011-1 of the Local Rules of the United States Bankruptcy Court for the Southern

District of New York, withdrawing from the Bankruptcy Court the reference of this Adversary

Proceeding; (ii) abstaining from exercising jurisdiction to adjudicate this matter pursuant to 28

U.S.C. 1334(c)(1); and (iii) granting such further relief to Santee Cooper as may be appropriate.

Dated:  May 8, 2019
        New York, New York

Respectfully submitted,

 /s/ Michael J. Venditto_____
**REED SMITH LLP**
Michael J. Venditto
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
mvenditto@reedsmith.com

Paul M. Singer
225 Fifth Avenue
Pittsburgh, PA  15222
psinger@reedsmith.com

Derek J. Baker
1717 Arch Street
Philadelphia, PA  19103
dbaker@reedsmith.com


*Attorneys for*
*South Carolina Public Service Authority*